# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re:**

JEANNINE YVETTE
WARKENTIN,

**Debtor.**

**Bankruptcy Case
No. 08-41257-JDP**

_____

R. SAM HOPKINS, TRUSTEE,

**Plaintiff,**

**vs.**

LARRY G. WARKENTIN,

**Defendant.**

**Adv. Proceeding No. 09-8081**

_____

**MEMORANDUM OF DECISION**
_____

**Appearances:**

Monte Gray, Gray Law Office, Pocatello, Idaho, Attorney for
Plaintiff.

Larry G. Warkentin, Inyokern, California, Pro Se Defendant.

MEMORANDUM OF DECISION - 1

## Introduction

In this adversary proceeding, the chapter 7 trustee, R. Sam Hopkins ("Plaintiff"), seeks Court approval to sell a certain parcel of real property free and clear of the co-ownership interest of Defendant Larry G. Warkentin ("Defendant") pursuant to § 363(h) of the Bankruptcy Code.[1] In addition, to the extent Defendant claims more than an undivided one-half interest in the property, Plaintiff seeks to avoid that interest under § 544(a)(3). Defendant opposes the relief sought by Plaintiff.

Following a trial in this action conducted on June 11, 2010, the parties filed supplemental briefs, and the Court took the issues under advisement. Having now carefully considered the evidence and testimony, the parties' submissions, and the applicable law, this Memorandum constitutes the Court's findings of fact and conclusions of law. Rule 7052.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

**Facts**

On December 12, 2008, Debtor Jeannine Y. Warkentin ("Debtor")

filed a petition for relief under chapter 7 of the Bankruptcy Code, and

Plaintiff was appointed as the chapter 7 trustee.[2]  Prior to the filing of her

bankruptcy petition, Debtor had been married to Defendant.  On January

2, 2008, following months of protracted dissolution proceedings, a

judgment was entered by a California court formally dissolving the

marriage.  Ex. 103.  In its judgment, however, the California court declined

to fully resolve the parties' marital property rights and custody issues,

specifically reserving jurisdiction over these and "all other issues."  *Id.*

On April 28, 2008, shortly after the dissolution judgment was

entered, Defendant filed a chapter 7 petition in the Eastern District of

California.[3]  Randell Parker ("Parker") was appointed as the chapter 7

trustee of that bankruptcy case.  In his schedules, Defendant disclosed that

---

[2]  Debtor's bankruptcy case was assigned Case No. 08-41257-JDP.

[3]  Defendant's bankruptcy case was assigned Case No. 08-12312-A-7, and
was presided over by Judge Whitney Rimel.

MEMORANDUM OF DECISION - 3

he held, along with his ex-spouse, an undivided one-half interest in a

mobile home and the land on which it was located at 215 S. Hawk Street,

Inyokern, California, more particularly described as:

> Parcels 3 and 4 of Parcel Map 2602, in the unincorporated area
> of the County of Kern, State of California, as per Map
> recorded December 16, 1974 in Book 12, Page 62 of Parcel
> Maps, in the Office of the County Recorder of said County.

Ex. 100.  In addition to the real property, Defendant's schedules listed his

interest in various items of personal property, including several vehicles,

machinery, farm animals, and other sundry items.  Defendant ascribed a

value of $68,215 to the real property, and claimed a $75,000 homestead

exemption as to the mobile home and land.  No objection was ever filed as

to the homestead exemption.

During his bankruptcy case, Defendant entered into a transaction

with Parker to purchase the bankruptcy estate's interest in "all of

[Defendant's] non-exempt real and personal property for $5,000."  Ex. 203,

Trustee's Motion to Sell at 1.  Notice of the proposed sale was given to the

interested parties in Defendant's bankruptcy case, and no objections to the

MEMORANDUM OF DECISION - 4

sale were filed.  Following a hearing, the bankruptcy court approved the

sale.  *See* Exs. 201, 204.[4]  Defendant paid[5] Parker the agreed purchase price.

However, no additional documents were prepared or executed to evidence

the sale.

Shortly thereafter, Debtor filed her individual bankruptcy petition in

Idaho.  In her schedules, she also listed the real property located in

Inyokern, and she did not claim an exemption in that property.  At the

§ 341 meeting in her bankruptcy case, Plaintiff questioned Debtor about

her interest in the real property.  According to Plaintiff, she testified that

she believed she still had some interest in the real property.  This litigation

ensued.

///

---

[4]  The minute entry for that hearing indicates that there were no appearances by either the moving party or the respondent and that the motion was unopposed.  Ex. 201.

[5]  Defendant testified that he actually delivered several checks to Parker in relation to this transaction.  Although he had ordered copies of the cancelled checks from his bank, as of the date of the trial, he had not yet received them.  Plaintiff does not dispute that Defendant paid the purchase price, however.

MEMORANDUM OF DECISION - 5

## Discussion

### I.

In this action, Plaintiff asks the Court, pursuant to § 363(h), for authority to sell the Inyokern property free and clear of any co-ownership interest which Defendant may have in that property.  The Code provides that:

> the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if –
>
> > (1) partition in kind of such property among the estate and such co-owners is impracticable;
> >
> > (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> >
> > (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> >
> > (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat,

MEMORANDUM OF DECISION - 6

light, or power.

11 U.S.C. 363(h).

Before the Court can examine whether Plaintiff should be able to sell

the property free and clear of the interest of Defendant as a co-owner, it

must first determine what interests Debtor's bankruptcy estate and

Defendant each hold, if any, in the subject real property.

**A.**

Defendant contends that he and Debtor owned the Inyokern

property as community property, and, therefore, it became the property of

his bankruptcy estate pursuant to § 541(a)(2) when he filed his bankruptcy

petition.  Thus, Defendant argues, as a result of his transaction with the

trustee, Parker, he in fact purchased all interests in the real property,

including whatever interest his former spouse may have held therein.

Plaintiff disagrees, arguing that the Inyokern property was not

community property, but rather that, when Defendant filed for

bankruptcy relief, he and Defendant each held an undivided one-half

interest therein as joint tenants.  Plaintiff therefore contends that Debtor's

MEMORANDUM OF DECISION - 7

interest in the real property never became part of Defendant's bankruptcy

estate, and as a result, Defendant could not purchase that interest in his

transaction with Parker.

For the reasons explained below, the court agrees with Plaintiff.

**B.**

"It is well established that [in a bankruptcy case] state law

determines the nature and extent of a debtor's interest in property." *Abele*

*v. Modern Fin. Plans Svcs., Inc., (In re Cohen)*, 300 F.3d 1097, 1104 (9th Cir.

2002) (citations, internal quotation marks, and alterations omitted).

Whether property is characterized as separate property or community

property "is determined at the time of its acquisition." *Grinius v. Grinius*

*(In re Marriage of Grinius)*, 166 Cal. App. 3d 1179, 1186 (Cal. Ct. App. 1985).

Interestingly, under California law, under the facts of this case, two

common, but seemingly conflicting, presumptions are at work.

Like other community property states, there is a general rebuttable

presumption in California that property acquired during a marriage by

either spouse is community property.  *See* CAL. FAM. CODE § 760; *Hanf v.*

MEMORANDUM OF DECISION - 8

*Summers (In re Summers)*, 332 F.3d 1240, 1242-43 (9th Cir. 2003) (citing

*Haines v. Haines (In re Marriage of Haines)*, 33 Cal. App. 4th 277, 289-90 (Cal.

Ct. App. 1995)).  However, there is "a stronger rebuttable presumption

that the terms of a conveyance accurately state the ownership interests."

*Cooper v. Allustiarte (In re Allustiarte)*, 786 F.2d 910, 915 (9th Cir. 1986).  As a

matter of California public policy, this "form of title" presumption can

only be overcome by clear and convincing proof.  CAL. EVID. CODE § 662; *In

re Marriage of Haines*, 33 Cal. App. 4th at 297.

  In this case, Debtor and Defendant acquired the Inyokern property

during their marriage, lending credence to Defendant's argument that the

property was community property.  However, the recorded deed which

they received to document their acquisition of the property specifically

states that the grantors conveyed the property to "[Defendant] and

[Debtor], husband and wife, as joint tenants."  Ex. 100.  "In California,

'[p]roperty cannot be held both as community property and in either a

joint tenancy or a tenancy in common at the same time.'"  *In re Summers*,

332 F.3d at 1243 (quoting *Mitchell v. Mitchell (Estate of Mitchell)*, 76 Cal.

MEMORANDUM OF DECISION - 9

App. 4th 1378, 1385 (Cal. Ct. App. 1999)).  Thus, via this indication in the

deed that they were taking the property as "joint tenants," the general

community property presumption is rebutted.  *See, e.g., Bernstein v. Pavich*

*(In re Pavich)*, 191 B.R. 838, 844 (Bankr. E.D. Cal. 1996) (holding that in

California, the community property presumption "is overcome when a

declaration in a deed or other title instrument indicates spouses take title

to property as joint tenants."); *Orr v. Petersen (Estate of Petersen)*, 28 Cal.

App. 4th, 1742, 1747 (Cal. Ct. App. 1994) (holding that where "[t]he grant

deed specifically states the property is joint tenancy property," this "rebuts

the community property presumption . . ."); *Chase Manhattan Bank v. Jacobs*

*(In re Jacobs)*, 48 B.R. 570, 573 (Bankr. S.D. Cal. 1985) ("[T]he general

community property presumption is rebutted by the affirmative act of

specifying joint tenancy title in the deed.  Property taken in joint tenancy is

presumed to be held as joint tenancy property, with each spouse owning

an undivided one-half interest.").

However, because the form of title presumption is also rebuttable,

the required analysis is not complete.  The form of title presumption can

MEMORANDUM OF DECISION - 10

only be overcome by "evidence of an agreement or understanding between the parties that the title reflected in the deed is not what the parties intended." *Brooks v. Robinson (In re Marriage of Brooks)*, 169 Cal. App. 4th 176, 189 (Cal. Ct. App. 2008). "This standard requires evidence that is 'so clear as to leave no substantial doubt' [and] 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" *Id*. at 190 (quoting *Weaver v. Weaver (In re Marriage of Weaver)*, 224 Cal. App. 3d 478, 487 (Cal. Ct. App. 1990)). For his evidence on this point, Defendant testified that, throughout their marriage, it was never his intention, nor that of Debtor, to hold any of their property in any manner other than as community property.

Unfortunately for Defendant, this testimony, when measured against the deed, is hardly "clear and convincing" and is therefore insufficient to overcome the presumption that the Inyokern property was actually held in joint tenancy, and not as community property. *See* CAL. EVID. CODE § 662. Indeed, the better evidence appears to be to the contrary. Defendant's testimony regarding his intent seems to contradict

MEMORANDUM OF DECISION - 11

his own declaration in his bankruptcy schedules, in which he indicated that he held only a 50% interest in the Inyokern property. Moreover, the documentation evidencing the sale between Defendant and Parker did not clearly indicate that all of the real estate, including whatever interest Debtor may have had, was being sold. Rather, the trustee's motion and notice simply sought authority to sell "the estate's interest" in all real and personal property owned by Defendant. Debtor did not object to that sale, and shortly after that transaction was complete, she listed the same real property in her own bankruptcy schedules, potentially indicating that she believed she still had some interest in the Inyokern property.

On this record, the Court concludes that Defendant has not rebutted, with clear and convincing evidence, the presumption that he and Debtor held the Inyokern property as joint tenants, and not as community property. Therefore, what Defendant actually purchased from Parker in his prior bankruptcy case was all of the non-exempt personal property and *his* 50% interest in the real property; Debtor continued to hold an undivided one-half interest in the real property. Because Debtor retained

MEMORANDUM OF DECISION - 12

an interest in the real property when she filed her bankruptcy petition, it

became part of her bankruptcy estate pursuant to § 541(a)(1).[6]

## II.

Having determined the parties' respective interests in the Inyokern

property—namely, that both parties have an undivided one-half interest

therein—should Plaintiff be authorized to sell the property free and clear

of Defendant's interests under § 363(h)?  Plaintiff bears the burden of

showing that all the elements for a sale under § 363(h) have been satisfied.

*Zimmerman v. Spickelmire (In re Spickelmire)*, 2010 WL 2899026 (Bankr. D.

Idaho 2010).

## A.

First, Plaintiff must show that partition of the real property is

impracticable.  11 U.S.C. § 363(h)(1).  Defendant testified that the Inyokern

property actually consists of two separate, but contiguous parcels, but that

---

[6] Because the Court has concluded that Defendant only purchased his undivided one-half interest in the real property from his bankruptcy trustee, the Court need not, and does not, address Plaintiff's alternative claim that he may avoid any interest which Defendant acquired from Parker under § 544(a)(3).

MEMORANDUM OF DECISION - 13

the structures constructed or placed on the property straddle both parcels.

As a result of this physical impediment, and considering the additional

challenges to partition as a result of the ongoing dissolution proceedings,

the Court is persuaded that, in this context, partition of the real property is

impracticable.

**B.**

Second, Plaintiff must show that sale of the estate's undivided

interest would realize significantly less than sale of the property free and

clear of Defendant's interest.  § 363(h)(3).

As a bankruptcy trustee, Plaintiff has extensive experience in

liquidating real property.  He testified that, in his opinion, although a sale

of the bankruptcy estate's partial interest in the property may be possible,

it would be difficult to find a buyer, and if such a sale were even doable,  it

would realize significantly less for the estate than if the property were sold

free of Defendant's interest therein.  Given Plaintiff's experience in these

matters, the lack of any contrary evidence, and considering the uncertain

state of the title to this property as a result of the still-pending divorce

MEMORANDUM OF DECISION - 14

proceedings, as well as the implications of Defendant's prior bankruptcy case, the Court agrees with Plaintiff.

## C.

Next, in what the Court sees as his most difficult challenge, Plaintiff must show that the benefit to Debtor's bankruptcy estate flowing from a "free and clear" sale outweighs the potential detriment to Defendant.

There is some dispute in the record as to the market value of this real property.  In his bankruptcy schedules, Defendant opined that the value was $68,215.  The evidence shows that Parker apparently obtained a real estate agent's opinion as to the property's value, which was $100,000, but, considering the poor condition of the property and the frosty market conditions, Parker considered the realtor's opinion to be overly optimistic. *See* Ex. 203, Trustee's Motion to Sell at p. 3.

In her bankruptcy schedules, Debtor indicated the current value of her interest in the property was "unknown."[7]  Acknowledging these

---

[7] At trial, upon the request of Plaintiff's counsel, the Court took judicial notice of the schedules filed in Debtor's bankruptcy case.

MEMORANDUM OF DECISION - 15

discrepancies, Plaintiff testified that even at the lower value used by Defendant, after paying all costs of the sale, satisfying all valid liens on the property, and compensating Defendant for his one-half interest in the property, there should be least $20,000 in realizable equity available for Debtor's bankruptcy estate.

Concerning the detriment to Defendant resulting from a forced sale, Defendant argued that he had sole legal and physical custody of his four minor children, and that they resided with him on the Inyokern property. He explained that the children were currently undergoing psychological treatment and counseling, and that an adverse ruling by the Court authorizing a sale would effectively displace the children and would have a serious, undesirable impact on them.

However, as pointed out by Plaintiff, Defendant's argument was not supported by evidence in the record. Rather, the only facts to be properly established at trial were that Defendant lived in the home with four minor children. Plaintiff argued that such facts, without more, were insufficient to outweigh his evidence about the benefit that the bankruptcy estate

MEMORANDUM OF DECISION - 16

would realize from the sale of the property.

Although the Court recognizes the unfortunate nature of Defendant's situation, the Court is persuaded to agree with Plaintiff that, on this record, the benefit to the estate of a sale free and clear of Defendant's interest in the property, which would generate significant assets for Plaintiff to distribute to creditors, would outweigh any potential detriment to Defendant. While the property constitutes Defendant's family's home, he did not show that it was impossible for them to make other housing arrangements, especially since he will, like the bankruptcy estate, receive considerable cash equity from any sale. Plaintiff has therefore satisfied § 363(h)(3).

## D.

Finally, while at first glance it would seem to be a non-issue, Defendant challenges whether Plaintiff can show that the property is not being used for the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas. To the contrary, Defendant testified that he produces at least a portion of his own power on this rural

MEMORANDUM OF DECISION - 17

property, so that it may not be sold by Plaintiff.

Plaintiff argues that this Code provision was enacted by Congress to protect public utilities from being deprived of power sources because of the bankruptcy of a controlling owner.  In other words, in Plaintiff's view, § 363(h)(4) was not intended to preclude the bankruptcy sale of property where an owner generated electrical energy for *personal* use, and not for commercial sale.  Again, the Court agrees with Plaintiff.

In this case, the evidence is clear that, while Defendant does generate and use energy generated by solar panels and a windmill, he does not sell any of that energy to the public.  As a result, this element of § 363(h) is also met.

## Conclusion

In sum, while the Court is sympathetic to Defendant's unfortunate predicament, as explained above, the Court concludes that Plaintiff has adequately shown that a sale of the Inyokern property free and clear of Defendant's co-ownership interest under § 363(h) is proper.

MEMORANDUM OF DECISION - 18

Counsel for Plaintiff may submit a form of judgment for entry by the

Court.

Dated:  August 5, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 19